**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **In re:**<br><br>**Allied Telecom Group, LLC,**<br><br>**Debtor.** | **Chapter 11**<br><br>**Case No. 25-00599 (ELG)** |

**DECLARATION OF KEN WILLIAMS IN SUPPORT OF SALE MOTION**

I, Ken Williams, declare as follows pursuant to 28 U.S.C. § 1746:

1. I submit this declaration (the "Declaration") in support of the *Motion for (A) Entry of an Order (I) Approving Bidding Procedures; (II) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases; (III) Approving Stalking Horse Protections; (IV) Scheduling Bid Deadline, Auction Date, and Sale Hearing Date; (V) Approving Form of Notice Thereof; (B) Entry of an Order After the Sale Hearing (I) Authorizing the Debtor to Sell its Assets; and (II) Authorizing the Debtor to Assume and Assign Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* (the "Sale Motion") filed by Allied Telecom Group, LLC, the above-captioned debtor and debtor in possession (the "Debtor"). Capitalized terms used but not otherwise defined in this Declaration shall have the meaning ascribed to them in the Sale Motion.

2. Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein. I am over the age of eighteen, and, if called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

3. I am a seasoned telecommunications industry executive with over 30 years of experience building and leading ISP and Telecom Fiber Digital Infrastructure companies. In

addition to executive leadership, I have extensive experience and a strong technical background, building and managing next-gen optical transport networks and outside plant fiber construction. I completed my studies in Electrical & Computer Engineering at Drexel University in 1983.

4. I am the founder and chairman of LightCore MetroNet LLC ("LightCore"), the proposed purchaser of substantially all of the Debtor's assets.

5. I also am the founder and chairman and the majority member of the Debtor. I have served in various positions with the Debtor, including as its chief executive officer, since its founding in 1996. I therefore am familiar with the Debtor's business and operations.

6. Following the Petition Date, LightCore began negotiating with the Debtor, through their respective legal counsel, about serving as the stalking horse bidder in connection with a sale of the Debtor's assets.

7. At the outset of discussions between the Debtor and LightCore, LightCore disclosed to the Debtor that I am both the founder and chairman of LightCore and the majority member and chairman of the Debtor. My connection to LightCore and the Debtor is disclosed on the first page of the *Notice of (I) Designation of Stalking Horse Purchaser and (II) Hearing to Approve the (A) Stalking Horse Purchaser, (B) Stalking Horse Agreement, and (C) the Stalking Horse Protections* filed with the Court at Docket No 136.

8. The Debtor and LightCore ultimately reached agreement on the terms of a sale of substantially all of the Debtor's assets, which are reflected in the *Stalking Horse Purchase Agreement* (the "Stalking Horse Agreement").

9. Due to my personal involvement with LightCore, all negotiations and decision-making by the Debtor with respect to the sale of the Debtor's assets and the Stalking Horse Agreement were delegated to and conducted by the Debtor's current chief executive officer, Trey

Webb. I did not have any involvement, role, input, or decision-making authority with the Debtor in the selection of the stalking horse bidder, negotiation of the Stalking Horse Agreement, or other sale-related decisions after the commencement of the sale process, and did not discuss with or attempt to influence the Debtor or Mr. Webb regarding these matters.

10. I acted in good faith at all times during the Debtor's sale process. All terms, arrangements, and understandings between the Debtor and LightCore are set forth in the Stalking Horse Agreement, and there are no arrangements or agreements with any other party with respect to the sale.

11. I promptly cooperated with all requests received from the Debtor and the Debtor's financial advisor and investment banker, Dundon Advisers ("Dundon") with respect to the sale process. I complied with all requirements and provisions of the sale and bidding procedures approved by the Court.

12. Neither I nor anyone acting on my behalf contacted, attempted to contact, or otherwise communicated with any bidder or potential bidder at any time during the marketing and sale process. There was no collusion or agreement of any kind between me or anyone acting on my behalf and any potential bidder. Neither I nor anyone acting on my behalf took any action to interfere with, impede, or obstruct the marketing or sale process in any way.

13. I have no knowledge of any third party claim of an ownership interest in Purchased Assets being sold pursuant to the Stalking Horse Agreement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed June 18, 2026

*<u>/s/ Ken Williams</u>*
Ken Williams

Dated: June 18, 2026

Respectfully Submitted,

*/s/ David W. Gaffey*

WHITEFORD, TAYLOR & PRESTON, LLP
David W. Gaffey (Bar No. VA031)
3190 Fairview Park Drive, Suite 800
Falls Church, Virginia 22042
Phone: 703-280-3374
Email: dgaffey@whitefordlaw.com

*Counsel to LightCore MetroNet LLC*